**Patricia HYATT, Plaintiff,**

v.

**TOWN OF LAKE LURE; H.M. (Chuck) Place, III; Terri Potts; Blaine Cox; George Pressley; and Lea Hullinger, Defendants.**

No. CIV. 1:02CV94.

United States District Court,
W.D. North Carolina.
Asheville Division.

Aug. 26, 2002.

648

William R. White, White & Dalton, Brevard, NC, J. Thomas Davis, Forest City, NC, for Plaintiff.

Sandra M. King, Russell & King, P.A., Asheville, NC, for Defendants.

### *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

THIS MATTER is before the Court on the Defendants' motion to dismiss for failure to state a claim and on the Plaintiff's motion to amend complaint. For the reasons stated below, the Plaintiff's motion to amend is granted and the Defendants' motion to dismiss is granted in part and denied in part.

### I. FACTUAL HISTORY

In the 1920's, Chimney Rock Mountains, Inc. ("Chimney Rock") acquired title to a substantial area of land along the Broad River in Rutherford County, North Carolina, in order to construct what is now known as Lake Lure (sometimes, "the Lake"). Complaint, ¶ 7. Chimney Rock conveyed a portion of this land to Carolina Mountain Power Company ("the Mountain Power Company") for the Lake and the dam which contains it, but retained the land around the Lake. *Id.*, ¶ 8. On Febru-

ary 7, 1927, the Mountain Power Company conveyed to Chimney Rock an easement and right-of-way which granted the easement holder, *inter alia*, the "right to pass and repass over the strip of land which shall lie between the edge of the lake of [The Mountain Power Company] and the boundary line of the property adjoining [The Mountain Power Company's property] ... and to use the same for boat landings ...." *Id.*, ¶ 9; Exhibit A, Easement dated February 7, 1927, *attached to* Complaint. Chimney Rock developed the land around Lake Lure primarily for residential purposes. From the creation of Lake Lure in the 1920's until the present time, numerous boathouses and docks have been constructed along the shore of the Lake by persons owning land adjacent thereto. *Id.*, ¶ 12. In the mid–1960's, the Defendant Town of Lake Lure ("the Town") acquired the Mountain Power Company's interest in the Lake and dam. *Id.*, ¶ 13. The Town established "Lake Structures Regulations" ("LSR's") as a part of its municipal ordinances in the early 1990's. *Id.*, ¶ 14; Exhibit B, Lake Structures Regulations, *attached to* Complaint. These regulations govern the construction or alteration of any structures along or in the Lake. They also mandate that each owner of property adjacent to the Lake construct a "seawall" along the edge of the Lake.[1] Exhibit B, at § 94.07.

Plaintiff Patricia Hyatt is a resident of the State of Florida who has owned the land in question, which borders Lake Lure, "at all relevant times." *Id.*, ¶¶ 1, 15. She apparently purchased the land sometime in the mid–1980's; regardless, she is a successor in interest to real property formerly owned by Chimney Rock and as such, claims the right to the easement and right-of-way granted by the Mountain Power Company to Chimney Rock in 1927. *Id.*, ¶¶ 16, 17.

Beginning sometime in the late 1980's, Plaintiff's lot began to erode along the shoreline of Lake Lure as a result of flooding caused by storms and waves created by boat traffic on the Lake. *Id.*, ¶ 17. As a result of this erosion, she is left with a steep bank rising from the elevation of the shoreline up to the previous elevation of her lot and a shallow sandbar extending some 15 to 18 feet under the water. *Id.*

In June 2001, the Plaintiff sought and received a permit from the Town under the LSR's for the construction of the required seawall and a boathouse on her lot on Lake Lure which cost in excess of $110,000. *Id.*, ¶¶ 18, 19. She alleges that the seawall and boathouse were constructed in accordance with all relevant provisions of the LSR's. *Id.*, ¶ 20. Defendant Terri Potts, in her capacity as zoning administrator for the Town made "numerous inspections and photographs" of the boathouse and seawall but never interposed any objection to their location. *Id.*, ¶¶ 21, 22.

At some point, the boundary stake marking the western boundary of Plaintiff's property had become dislodged and was replaced incorrectly. *Id.*, ¶ 23. This mistake resulted in the seawall's encroachment some six to eight feet onto the neighboring property, owned by an entity controlled by Lemuel Oates. *Id.* Oates complained to the Town and requested that action be taken. *Id.*, ¶ 24. On November 21, 2001, Defendant H.M. (Chuck) Place, III, in his capacity as Town Manager for the Town of Lake Lure, sent Plaintiff a letter informing her that her construction violated the LSR's in four ways and that she would be fined $500 for each

---

1. "Seawall" is defined as "[a] structure built along the shoreline to resist the erosion of the land caused by the lake and which can also be used to moor boats and as a structure to receive and discharge boat's passengers and cargo." Exhibit B, *supra*, at § 94.02.

violation. *Id.*, ¶ 25; Exhibit C, Letter to Patricia Hyatt, dated November 21, 2001, *attached to* Complaint. Place stated that Plaintiff's seawall had not been constructed along the shoreline as defined in the LSR's, that she had filled a portion of the lake without approval of the Town Council, that her boathouse extended too far out into the Lake, and that her encroachment onto the land controlled by Oates violated her land disturbance permit. *Id.*, at Exhibit C.

This letter instructed the Plaintiff that in order to avoid these penalties and the possible demolition and reconstruction of the entire project, she would have to seek after-the-fact permission for filling in behind her wall from the Lake Lure Town Council or she could petition for a waiver of the penalties. *Id.*, ¶ 26; Exhibit C, *supra.* She did both; and the Town Council, in rejecting her petition, specifically required her to bring the construction into compliance with the LSR's, including the location of the seawall and boathouse. *Id.*, ¶ 27. Defendant Place wrote the Plaintiff a second letter on January 16, 2002, which detailed the procedures she should follow in order to comply with the LSR's. *Id.*, ¶ 28, Exhibit D, Letter to Patricia Hyatt, dated January 16, 2002, *attached to* Complaint. Pursuant to both of the Town's letters, Plaintiff filed a petition with what she refers to as the "Board of Adjustments and Appeals" for a variance for both her seawall and her boathouse.[2] *Id.*, ¶ 29. Prior to the hearing of the Board of Adjustments and Appeals, Defendant Potts forwarded a memorandum to members of the Board of Adjustment detailing various factual contentions, but did not provide the Plaintiff with a copy of this memorandum

nor a notice that it was being provided to the Board. *Id.*, ¶ 30; Exhibit E, Memorandum, dated February 4, 2002, *attached to* Complaint. The Board of Adjustments denied the Plaintiff's petition and she appealed that decision to the Town Council. *Id.*, ¶ 31. As of the filing of the complaint on April 24, 2002, the appeal remained pending. *Id.*

Plaintiff claims that the LSR's constitute zoning ordinances that were not promulgated according to the procedural requirements for zoning ordinances established by North Carolina Law and are, therefore, invalid. N.C. Gen.Stat. Chapter 160A, Article 19. Plaintiff further claims that the LSR's as applied to her violate the Equal Protection clause and both the substantive and procedural requirements of the Due Process clause of the Fourteenth Amendment; that her construction complies with the LSR's or, in the alternative, that the Town is estopped from denying that the construction complies with the LSR's because they issued a permit for the construction and Defendant Potts' failed to interpose an objection; and that the actions of the Town and the individual Defendants violated her constitutional rights under the color of state law in violation of 42 U.S.C. § 1983.[3] She also included in her complaint a request for a temporary restraining order and for preliminary injunctive relief which the undersigned previously denied by Order filed May 7, 2002.

The Plaintiff's motion to amend would add these facts. First, that the Town is protected by one or more insurance policies which will cover any recovery that she might obtain in this matter and as such

---

**2.** According to the Defendants submissions and the Plaintiff's amendments, this body is denominated the "Lake Structures Committee." *See generally,* Defendants' Motion to Dismiss; Plaintiff's Proposed Amended Complaint, ¶ 31.a.

**3.** The individual Defendants Blaine Cox, George Pressley, and Lea Hullinger are the members of the Town Council who voted against Plaintiff's petition for after-the-fact permission to back fill her wall. Complaint, ¶ 48.

has waived any sovereign immunity it might assert. Plaintiff's Motion to Amend Complaint, filed June 13, 2002, ¶ 2.a. Secondly, the Plaintiff seeks to clarify that each of the claims against the individual Defendants are made both in their individual and official capacities and that similar insurance policies cover each of them and constitute a waiver of immunity. *Id.,* ¶ 3.a-b. Furthermore, she alleges that each of the individual Defendants acted either in their official capacities or were grossly negligent, corrupt, or acted outside the scope of their authority or with "personal malice" towards the Plaintiff. *Id.,* ¶ 3.a. Third, the Town has used the Lake primarily for the purpose of generating and selling electricity to private wholesale purchasers, and the recreational uses of the Lake are primarily for the creation of profit or otherwise proprietary in nature as opposed to governmental. *Id.,* ¶ 13.a. Fourth, the facts and conclusion presented by Defendant Potts in her memorandum to the Lake Structures Committee (Board of Adjustment) are "false and misleading" and they were made for the improper purpose of influencing the members of the Committee and prejudicing the Plaintiff's attempt to obtain a variance. *Id.,* ¶ 30.a. Fifth, the Town Council rejected Plaintiff's appeal from the Lake Structures Committee's denial of her petition for a variance on May 14, 2002, and Plaintiff has filed a *writ of certiorari* with the North Carolina Superior Court of Rutherford County from that ruling in accordance with N.C. Gen. Stat. § 160A–388. *Id.,* ¶ 31.a. Sixth and finally, that the denial of her request for a variance regarding the side setbacks and location of the boathouse was arbitrary and capricious.

After an opposing party has filed a responsive pleading, Rule 15(a) provides, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Defendants have not objected to the proposed amended complaint, and the motion to amend is allowed.

The Defendants move to dismiss several of Plaintiff's claims under Fed.R.Civ.P. 12(b)(6). In addition to arguing that she fails to state a claim upon which relief can be granted, the Defendants raise several defenses to Plaintiff's claims. First, they argue that, insofar as Plaintiff's claim for money damages is based on some state law grounds rather than § 1983, it is barred by sovereign immunity. Similarly, Defendants assert they were performing a quasi-judicial function in enforcing the LSR's and are, therefore, immune from suit. Defendants further argue that the LSR's are not "zoning ordinances" under Article 19 of Chapter 160A of the North Carolina General Statutes and are not governed by the procedural requirements of that Article. Alternatively, if the LSR's do qualify as zoning ordinances, the Defendants allege the statute of limitations has run on any challenge to their validity. Finally, after arguing that the complaint fails to state a claim of constitutional violation under § 1983, the Defendants urge the Court to decline any further declaratory judgment based on a state law challenge to the LSR's in deference to the pending state court preceding.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the plaintiff's complaint and must construe those facts in the light most favorable to the plaintiffs.... [Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997); *Shepard's, Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id.*, § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Rule 12(b) authorizes dismissal based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Hishon, supra; Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory .... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.

*Neitzke, supra*, at 326–27, 109 S.Ct. 1827 (internal citations omitted). For the limited purpose of ruling on Defendants' motion, the Court has accepted as true the facts alleged by Plaintiff in the complaint and amendments thereto, and will view them in a light most favorable to her.

## III. DISCUSSION

### A. Sovereign Immunity

▮ The Defendants accurately note that Plaintiff's amended complaint is "unclear" as to the legal basis for her claim for money damages. Defendants' Brief in Support of Motion to Dismiss (Defendants' Brief), filed May 31, 2002, at 4. Insofar as the claim for money damages is based on "civil liability" or some state source of law, Defendants argue that those claims are barred by sovereign or governmental immunity. *Id.* Under North Carolina law regarding zoning, "no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance." N.C. Gen.Stat. § 160A–485(a); *Blackwelder v. City of Winston–Salem*, 332 N.C. 319, 321, 420 S.E.2d 432, 434 (1992). Furthermore, "[t]o sustain [a] personal or individual capacity suit, [Plaintiff] must initially make a *prima facie* showing that the defendant-official[s'] tortious conduct falls within one of the immunity exceptions, *i.e.*, that the official's conduct is malicious, corrupt, or outside the scope of official authority." *Trantham v. Lane*, 127 N.C.App. 304, 307, 488 S.E.2d 625, 627 (1997) (citing *Epps v. Duke University, Inc.*, 122 N.C.App. 198, 205, 468 S.E.2d 846, 852 (1996)); *see also, Hawkins v. State of North Carolina*, 117 N.C.App. 615, 629–30, 453 S.E.2d 233, 241–42 (1995). " 'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he *intends* to be prejudicial or injurious to another.' "

*Thomas v. Sellers*, 142 N.C.App. 310, 313, 542 S.E.2d 283, 286 (2001) (quoting *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)) (emphasis added). "An act is wanton when it is done of wicked purpose, or when it is done needlessly, manifesting a reckless indifference to the rights of others." *Marlowe v. Piner*, 119 N.C.App. 125, 128, 458 S.E.2d 220, 223 (1995) (citing *Grad*, 312 N.C. at 313, 321 S.E.2d at 891). Defendants correctly note that the original complaint did not contain any allegations that the Town had purchased insurance or that any of them acted with malice, corruptly, or outside the scope of their duties.

▮▮▮ Plaintiff's response to this argument takes two forms which are antithetical to each other. On one hand, she disclaims any cause of action for damages based on any source of law other than § 1983: "Plaintiff has not filed a State tort claim against the Defendants for damages, but a civil rights claim under 42 U.S.C. § 1983 for damages." Plaintiff's Brief in Response to Defendants' Motion to Dismiss (Plaintiff's Brief), filed June 13, 2002, at 3. Plaintiff correctly observes that claims against the individual Defendants in their personal capacities are not covered by sovereign immunity. *See, Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). " 'On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.' " *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.; see also, Graham*, 473 U.S. at 167, 105 S.Ct. 3099. Plaintiff's claims against the Town itself and the individual Defendants in their official capacities can proceed because "the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*, at 694, 98 S.Ct. 2018. "While the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Hafer*, 502 U.S. at 25, 112 S.Ct. 358 (citing *Graham, supra*, at 166–67, 105 S.Ct. 3099.)

On the other hand, Plaintiff's amendments to the complaint and a great deal of the parties' arguments focus on whether or not the Town has somehow waived its governmental immunity. Plaintiff's Motion to Amend, ¶¶ 2.a, 3.a-b; Plaintiff's Brief, at 3–4; Defendants' Reply Brief, filed June 19, 2002, at 1–4. These arguments and the amendments are inconsistent with the position that Plaintiff's claim for money damages is based solely on § 1983. Furthermore, Plaintiff has not clarified what other source of law might serve as a basis for monetary damages against the Defendants. As such, analysis of the possibility of waiver of immunity is unnecessary: Plaintiff's claim for money damages is limited to the claim under § 1983 which can be asserted against the Town and the individual Defendants in both their personal and official capacities as described above.

**B. Quasi–Judicial Immunity**

▮▮▮ The Defendants next assert that their actions in enforcing the LSR's—as

opposed to enacting them—cannot be reviewed, under § 1983 or otherwise, based on the application of absolute judicial immunity to this "quasi-judicial" function. *See, Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *McCray v. Maryland,* 456 F.2d 1, 3–4 (4th Cir.1972); *Schiazza v. Zoning Hearing Bd. of Fairview Township, York Co., Pennsylvania,* 168 F.Supp.2d 361 (M.D.Pa.2001). "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine,* 508 U.S. at 432, 113 S.Ct. 2167. Nevertheless, ruling on such issues may be appropriate on a motion to dismiss pursuant to Rule 12(b)(6), where the issue presented is purely a legal determination based on the facts alleged in the complaint. *See, e.g., Barnes v. Winchell,* 105 F.3d 1111, 1114–16 (6th Cir.1997) (reviewing a ruling of a district court on a motion to dismiss based on absolute judicial immunity). "[T]he 'touchstone' for the . . . applicability [of judicial immunity] has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' " *Antoine, supra,* at 435–36, 113 S.Ct. 2167 (quoting *Burns v. Reed,* 500 U.S. 478, 500, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Id.,* at 436, 113 S.Ct. 2167 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1991)). "Whether an act is judicial depends on 'the "nature" and "function" of the act, not the "act" itself.' " *Zapach v. Dismuke,* 134 F.Supp.2d 682, 696 (E.D.Pa.2001) (quoting

*Mireles v. Waco,* 502 U.S. 9, 13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978))). "Courts look to two factors in making this determination: the nature of the act, *i.e.,* whether the act is a measure normally performed by a judge, and the expectations of the parties, *i.e.,* whether the parties dealt with the judge in his judicial capacity." *Id.,* at 696 (citing *Mireles,* at 12, 112 S.Ct. 286).

■ Only the individual Defendants in their personal capacities, not the Defendants in their official capacities or the Town itself, can assert quasi-judicial immunity in these circumstances. *Schiazza,* 168 F.Supp.2d at 374 ("[W]hen a zoning board itself is sued, it is sued in its official capacity and is entitled to no immunity whatsoever."); *accord, Hafer,* 502 U.S. at 25, 112 S.Ct. 358. The Defendants assert that their actions in "enforcing" the LSR's against the Plaintiff are entitled to quasi-judicial immunity. Some of these actions as alleged constitute quasi-judicial action, some of them do not, and the Court is unable to determine the proper characterization of some of them at this stage of the proceedings.

■ The decisions of the Town Council members to deny Hyatt's petition and appeal are quasi-judicial. The LSR's vest absolute discretion in the Town Council to determine whether or not to permit filling of the lake. *See* Exhibit B, at § 94.12. Likewise, appeals from decisions of the Lake Structures Committee are vested with the Town Council.[4] *Id.,* at § 94.16(E). As such, the individual Council members who voted against Plaintiff's appeal have absolute immunity from suit in

---

4. The Court assumes, because no party has attempted to clarify this point, that the "Lake Structures Committee" and the "Board of Adjustments and Appeals" referred to by the parties and the "Lake Structures Appeals Board" referred to in the LSR's are the same body.

their personal capacities based on these decisions.

 Insofar as the acts of composing and sending letters to Plaintiff might be grounds for liability, these acts of Defendant Place are ministerial in nature and not entitled to immunity. *See, McCray,* 456 F.2d at 3–4, n. 7. Likewise, the actions of Defendants Potts in her capacity as zoning administrator at the Plaintiff's property during construction is a ministerial function.[5]

 The Court is unable to determine, based on the allegations in the complaint and the amendments, whether Defendant Potts was in any way acting in a judicial capacity at least arguably delegated to her under the relevant municipal ordinances, including the LSR's, in submitting her memorandum to the Lake Structures Appeals Board. *See, King v. Myers,* 973 F.2d 354, 356 (4th Cir.1992) ("The first condition is that the judge's action cannot have been undertaken in the clear absence of all jurisdiction." (citations omitted)); *Mireles,* 502 U.S. at 11, 112 S.Ct. 286; *see also, Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir.1994) (officials asserting quasi-judicial immunity must have been acting with in scope of authority); *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir.1986). The LSR's vest the zoning administrator with the authority for final approval of any construction as well as the authority to review applications for lake structure permits, to grant exemptions from the seawall construction requirement, to issue a lake structure certificate and tag, and to provide notice to all interested persons upon an application for a variance. Exhibit B, at §§ 94.03(D), 94.07(A), 94.16(C), (D).

Under North Carolina law, a municipal zoning inspector can be charged with the duty of enforcing applicable state and local laws relating to construction of buildings. N.C. Gen.Stat. § 160A–411, 412. The Lake Structures Appeals Board is granted the authority to make initial determinations concerning applications for a variance. Exhibit B, *supra,* at § 94.16(C), (E) The Town Council is granted the authority to condemn lake structures which do not comply with the LSR's. *Id.,* at § 94.08(B). It is clear that Defendant Potts' memorandum was sent to the "Lake Structures Committee/Board of Adjustment" in some sort of advisory capacity; however, the Court cannot determine the exact nature of or Defendant Potts' relationship to this body. As such, she has not carried her burden on this claim and her motion to dismiss based on quasi-judicial immunity is denied.

Defendants argue in their reply brief for the first time that they are also covered by qualified immunity in that they have not violated any clearly established rights. This immunity, rather than quasi-judicial immunity, provides the proper framework for analysis of most of the Defendants' alleged conduct. Decisions by Potts or Place to enforce the LSR's neither resolved a dispute between parties nor adjudicated Hyatt's rights. *See, Antoine,* 508 U.S. at 435–36, 113 S.Ct. 2167. Inquiry into this question requires a more detailed examination of the alleged constitutional rights violated by the Defendants. *Hope v. Pelzer,* —— U.S. ——, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether

---

**5.** It is unlikely that these acts could be the source of any personal liability for either of these Defendants. Normally, courts have found the failure to perform a ministerial task which deprives a plaintiff of some right as a source of liability. *See, e.g., Tanner v. Hardy,*

764 F.2d 1024, 1026, n. 4. (4th Cir.1985) (noting that Maryland circuit court judge's failure to call a statutorily required hearing might qualify as a "ministerial" function.) The Court has commented on them here only out of a desire for completeness.

plaintiff's allegations, if true, establish a constitutional violation." (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))). As such, the discussion follows the Court's discussion of the adequacy of the complaint to state a claim under § 1983.

The Plaintiff's claims against the individual Town Council members, Defendants Cox, Pressley and Hullinger, in their personal capacities, are barred by quasi-judicial immunity and are dismissed.

**C. Validity of the Lake Structures Regulations and Statute of Limitations**

Next, Defendants assert that the LSR's are not zoning ordinances subject to the requirements imposed by Article 19 of Chapter 160A of the North Carolina Statutes or, alternatively, if they are found to be zoning ordinances, that Plaintiff's challenge is barred by the applicable statute of limitations. "A cause of action as to the validity of any zoning ordinance, or amendment thereto, adopted under this Article or any other applicable law shall accrue upon adoption of the ordinance, or amendment thereto, and shall be brought within two months ...." N.C. Gen.Stat. § 160A–364.1. In her action for declaratory judgment, Plaintiff seeks a ruling that the LSR's are not based on any authority granted to the Town by the General Assembly of North Carolina, other than Article 19, that the LSR's exceed the authority granted by that Article, and, as such, they were not validly enacted. Insofar as the LSR's may be within the grant of power under Article 19, Plaintiff argues they do not comply with the procedural requirements imposed by the Article and are invalid.

■■■■ The Defendants also argue that this Court should decline to grant a declaratory judgment in this matter based on the ongoing, state court litigation dealing with these issues. Review of Plaintiff's petition in the state proceeding, however, indicates that she has not raised the validity of the LSR's in that matter. *See* Petition for Review, *attached to* Defendants' Brief. That action seeks a review of the determinations made by these Defendants in applying the LSR's to Plaintiff's construction. *Id.* In determining whether to stay a federal declaratory judgment proceeding pending the outcome of a pending, parallel state proceeding, this Court must examine "the scope of the pending state proceeding, the nature of available defenses, and whether the parties' claims could be adjudicated satisfactorily." 17A Moore's *Federal Practice*, § 122.06[4][a], at 122–8; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287–89, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). This Court will not decline to entertain Plaintiff's declaratory judgment claims here. First, she has raised more claims here than she has in her state court petition. Second, it appears she has chosen to litigate those claims in this forum and filed the state court petition merely to protect her rights. Amended Complaint, ¶ 31a, ("so as not to lose any right of appeal ...."). Third, nothing about the state court proceeding will prevent satisfactory adjudication of the matter in this Court.

■■■■ The Court need not determine whether the LSR's constitute "zoning" ordinances as that term is defined in Part 3 of Article 19 of Chapter 160A of the North Carolina General Statutes. Part 3 grants municipalities the power, *inter alia*, to

regulate and restrict the height, number of stories, and size of any buildings or other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and

use of buildings, structures, and land for trade, industry, residence or other purposes . . . .

N.C. Gen.Stat. § 160A–381. "Zoning" is generally defined as "[t]he legislative division of a region, especially a municipality, into separate districts with different regulations within the districts for land use, building size, and the like." *Black's Law Dictionary,* at 1612 (7th ed.1999). While the LSR's may not fit exactly that general description and the specific grant of authority in § 160A–381, they collectively fall within one or another of the grants of power under Article 19 of Chapter 160A. Part 4 of that Article provides for the "Acquisition of Open Space." N.C. Gen. Stat. §§ 160A–401–407. "[A]ny . . . city may acquire, by purchase . . . or otherwise, and through the expenditure of public funds, . . . any . . . interest or right in real property in order to preserve, through limitation of their future use, open spaces and areas for public use and enjoyment." N.C. Gen.Stat. § 160A–401; *see also, Keeter v. Town of Lake Lure,* 264 N.C. 252, 141 S.E.2d 634 (1965) (finding that the Town had the power to issue bonds in order to purchase the Lake and dam because it served a public purpose). Part 5 of Article 19 provides for the establishment of one or more officers to act as building inspectors. Such officers are charged with the duty to enforce state and local laws relating to "the construction of buildings and other structures . . . [t]he maintenance of buildings and other structures . . . [and] other matters that may be specified by the city council." N.C. Gen.Stat. § 160A–412. Even though the LSR's may not fall entirely within the grant of authority under § 160A–381, they are under the powers granted to the Town under Article 19. ▮ Since the LSR's fall within Article 19, any attack on their validity is made pursuant to § 160A–364.1. The LSR's are

"adopted under [Article 19] or any other applicable law." N.C. Gen.Stat. § 160A–364.1. As such, a cause of action challenging the validity of the LSR's accrued upon their adoption and must be brought within two months of enactment of the ordinance. N.C. Gen.Stat. §§ 1–54.1, 160A–364.1. Insofar as Plaintiff's cause of action under 42 U.S.C. § 1983 attacks the facial validity of the LSR's as a constitutional matter in addition to the attack on the validity of the LSR's under state law, the cause of action also accrued upon passage of the LSR's in 1992.[6] *See, Capital Outdoor Advertising, Inc. v. City of Raleigh,* 337 N.C. 150, 160, 446 S.E.2d 289, 295 (1994) (Discussing differing federal and state conclusions regarding the statute of limitations on § 1983 challenges to zoning and determining that plaintiff's claim was time barred because § 160A–364.1 determined the date of accrual under either standard (citing *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir.1991) (applying 3–year personal injury statute of limitations in N.C. Gen.Stat. § 1–52(5), but noting accrual of the cause of action at the time of enactment under § 160A–364.1))); *Pinehurst Area Realty, Inc. v. Village of Pinehurst,* 100 N.C.App. 77, 394 S.E.2d 251 (1990) (applying N.C. Gen.Stat. §§ 1–54.1, 160A–364.1). Under both causes of action, Plaintiff's challenge to the validity of the LSR's on their face is time barred.

## D. Compliance and Estoppel

The Defendants have not moved to dismiss Plaintiff's claim that her construction is, in fact, in compliance with the LSR's or, if not, the Defendants are estopped to deny that it is in compliance based on the issuance of the permits and the failure of Defendant Potts to interpose any objection to the construction.

---

**6.** Plaintiff does not challenge any of the later amendments to the LSR's.

## E. Section 1983 claims

Because Plaintiff's § 1983 claims relating to the facial validity of the LSR's are time barred, the Court need only consider her claims relating to the application of the LSR's to her.

■■■■■■ Plaintiff argues that the application of the LSR's to her in this case violated equal protection in that the regulations were applied "contrary to interpretations and application of the [LSR's] to others similarly situated." Complaint, ¶ 49m.[7] In order to establish a claim for selective prosecution, Plaintiff must allege that:

(1) a governmental agent or body intentionally accorded the plaintiff different treatment than it accorded other, similarly situated persons under the same law; (2) either the plaintiff is a member of [a] suspect class or the government's treatment of the plaintiff was entirely arbitrary, irrational, intentional, and unrelated to any governmental interest; and (3) the plaintiff suffered an injury that was caused by the discriminatory treatment.

*McWaters v. Rick,* 195 F.Supp.2d 781, 790–91 (E.D.Va.2002); *see also, Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2nd Cir.1995). Although such claims "must be alleged with sufficient specificity to avoid being conclusory ... there is no heightened pleading

requirement imposed on the plaintiff." *McWaters,* 195 F.Supp.2d at 791. Plaintiff alleges that she has been treated differently from others similarly situated. She also alleges that the Defendants acted with "personal malice" towards her and that the Defendants acted arbitrarily and capriciously. Although these allegations are general, they are sufficient to meet the standards of Rule 12(b)(6). *Zahra,* 48 F.3d at 684 n. 5 (noting the following allegation to be sufficient, "The acts of all individual defendants as alleged herein were made intentionally or in reckless disregard of Zahra's rights, were made in bad faith and constitute a pattern of discrimination against Zahra."). As such, Plaintiff has sufficiently alleged a claim of selective prosecution in violation of the equal protection clause.

■■■■■■ Next, Plaintiff argues she was not afforded adequate procedural protections by the Defendants in the application of the LSR's.

It is by now axiomatic that the language of the Due Process Clause—"nor shall any State deprive any person of life, liberty, or property, without due process of law ...."—calls for two separate inquiries in evaluating an alleged procedural due process violation. First, did the plaintiff lose something that fits into one of the three protected categories: life, liberty, or property? And, if so, did the plaintiff receive the minimum measure of procedural protection warranted under the circumstances?

*Mallette v. Arlington County Employees' Supplemental Retirement System II,* 91 F.3d 630, 634 (4th Cir.1996) (citing *Board of Regents v. Roth,* 408 U.S. 564, 569, 92

---

7. This claim of "selective prosecution" is distinct from a claim of "malicious prosecution" under the Fourth Amendment or under the substantive arm of the due process clause of the Fourteenth Amendment. *See, Albright v.*

*Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Osborne v. Rose,* 133 F.3d 916 (table), 1998 WL 17044 (4th Cir. 1998).

S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). Here, the first issue is clearly met: Plaintiff alleges that she is being deprived of her interest in real and personal property. She alleges that she will have lost the use of some 15 to 18 feet of her land that is now underwater and that she will lose the value of her boathouse and dock. Thus, the Court is led to the second prong of this test, whether Plaintiff received the "minimum measure of procedural protection warranted under the circumstances." *Id.* North Carolina has determined that

> due process requirements for quasi-judicial zoning decisions mandate that all fair trial standards be observed when these decisions are made. This includes an evidentiary hearing with the right of the parties to offer evidence; cross-examine adverse witnesses; inspect documents; have sworn testimony; and have written findings of fact supported by competent, substantial, and material evidence.

*County of Lancaster, S.C. v. Mecklenburg County, N.C.*, 334 N.C. 496, 507–08, 434 S.E.2d 604, 612 (1993). "In the zoning context, these quasi-judicial decisions involve the application of zoning policies to individual situations, such as variances, special and conditional use permits, and appeals of administrative determinations." *Id.*, at 507, 434 S.E.2d at 612 (citing *Humble Oil & Refining Co. v. Board of Aldermen*, 284 N.C. 458, 202 S.E.2d 129 (1974)).

> In making quasi-judicial decisions, the decision makers must "investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature."

*Id.* (citing *Black's Law Dictionary* 1245 (6th ed.1990)). "These decisions involve two key elements: the finding of facts regarding the specific proposal and the exercise of some discretion in applying the standards of the ordinance." *Id.* " 'When a board of aldermen, a city council, or zoning board hears evidence to determine the existence of facts and conditions upon which the ordinance expressly authorizes it to issue a special use permit, it acts in a quasi-judicial capacity.' " *Id.*, at 508, 434 S.E.2d at 613 (quoting *Humble Oil & Refining Co.*, 284 N.C. at 469, 202 S.E.2d at 136–37).

Plaintiff alleges that she made two separate applications to the Town Council for factual determinations based on specific authorizations of authority to the Council in the LSR's. First, she applied for after-the-fact permission to back fill her wall and for a waiver of penalties. Exhibit B, at § 94.12. Second, she appealed the determination of the Lake Structures Board. *Id.*, at § 94.16. Both of these determinations fall within the definition of quasi-judicial.[8] Indeed, the Defendants have been granted immunity in their individual capacities for the denial of these applications on the basis of quasi-judicial immunity. Plaintiff further alleges that the LSR's generally do not contain adequate procedural protections. Although the LSR's may not fall squarely within the definition of zoning, they are analogous to zoning and other land use regulations and the same procedural protections should apply to quasi-judicial determinations under the LSR's. As such, she has adequately stated a cause of action for denial of her procedural due process rights in the application of the LSR's to her in this case.

---

**8.** It is not alleged that the Lake Structures Appeals Board did not afford Plaintiff adequate process.

Lastly, Plaintiff alleges that the application of the LSR's to her has denied her substantive due process in that, as applied to her land, they are unconstitutionally vague.

A law is unconstitutionally vague if it is not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties," and if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Tri–County Paving, Inc. v. Ashe Co.*, 281 F.3d 430, 441, n. 9 (4th Cir.2002) (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)); *United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir.1999) ("Plaintiff mounted an "as applied" challenge to the ordinance, which requires that we determine whether it is unconstitutionally vague as applied to the specific facts of this case."). Plaintiff argues that in light of the erosion which has taken place along her property, the requirement that "[n]o structure shall be placed in the water more than 30 feet ... as measured to and from the shoreline," combined with the definition of "Shoreline" as "[t]he line where the land and water meet most of the year which is at the elevation of 990 feet MSL," makes it impossible for her to determine where she is to construct her seawall and, consequently, the distance her dock and boathouse extend out into the Lake. *See* Exhibit B, at §§ 94.02, 94.05(B). Because of erosion which has taken place, the "line where the land and water meet most of the year" has moved some 15 to 18 feet onto Plaintiff's property from where it was when Plaintiff purchased her lot.[9]

The Defendants assert that the LSR's define the location of the shoreline and this definition is "sufficiently explicit" to define

the terms such that "men of common intelligence" need not "guess at its meaning." The LSR's govern construction within the "Lake Boundary." *Id.*, at § 94.01 ("No structure shall hereafter be erected or maintained within the lake boundary of Lake Lure ...."). The "Lake Boundary" is defined as "[t]he contour elevation 995 feet MSL." *Id.*, at § 94.02 "MSL" refers to "elevation above mean sea level" according to United States Geological Survey data. *Id.* As mentioned above, the LSR's also mandate construction of a seawall along the shoreline—defined as the point where the water meets the land most of the year, normally at 990 MSL.

The only case cited by either party which is factually similar was decided by the North Carolina Supreme Court in 1972. *State v. Vestal*, 281 N.C. 517, 189 S.E.2d 152 (1972). In that case, a county zoning ordinance required that owners of various types of salvage or junk yards erect "[a] solid fence or wall not less than 6 feet in height ... not less than 50 feet from the edge of any public road adjoining the yards ...." *Id.*, at 518, 189 S.E.2d at 154. Ruling on both state and federal constitutional grounds, the North Carolina court found "[t]he ordinance contains no definition of the term 'edge of any public road,'" because the term "edge" could be subject to varying interpretations, some dependent upon the type of road in question. *Id.*, at 521, 189 S.E.2d at 156.

Plaintiff argues that the phrase "line where the land and water meet most of the year" is vague as applied to her case in that it is unclear what time should be used in fixing that line—the line at the time the Lake was created, the line at the time the Town purchased the Lake from The Mountain Power Company, the line at the time

9. The Defendants argue that Plaintiff's property was already subject to the LSR's when it was purchased. However, the complaint alleges that the LSR's were promulgated in 1992, after Plaintiff purchased the lot in question. Complaint, ¶¶ 14, 16, 17.

Plaintiff purchased her lot, the line at the time the LSR's were enacted, the line at the time Plaintiff applied for her permit, or the line at the time construction began.[10] As the *Vestal* court stated, "[t]he ordinance does not require, and would not necessarily be satisfied by, the erection of a [seawall] upon the boundary of the lot .... " *Id.*, at 522, 189 S.E.2d at 156. Assuming, *arguendo*, that Plaintiff has placed her seawall along the lot line, she has been cited for a violation of the LSR's for doing just that.[11] The *Vestal* court was concerned with a situation where the right-of-way for the road did not extend 50 feet from "the edge of the road" and, as a result, the owner of a junkyard would be forced to build a fence inside the boundary of the right-of-way. Here, Plaintiff's complaint alleges she is forced to build the wall substantially inside the boundary line of her property. "In that situation, the ordinance would require the erection of a [seawall] at a point which would render virtually unusable a portion of the land ...." *Id.*

Based on the foregoing, the Court concludes that Plaintiff has adequately alleged that the LSR's as applied to her land in this instance violate due process in that they are unconstitutionally vague.

## F. Qualified Immunity

■ In their reply brief, the Defendants raise for the first time the defense of

qualified immunity from suit. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Pelzer*, 122 S.Ct. at 2513. As detailed above, the amended complaint adequately alleges violations of the equal protection clause of the Fourteenth Amendment and both the procedural and substantive components of the due process clause of the same Amendment.

> Despite their participation in ... constitutionally impermissible conduct, the [Defendants] may nevertheless be shielded from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Pelzer*, 122 S.Ct. at 2515 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This inquiry deals with interpretations of the law at the time of the alleged acts—here, during the period between June 2001 and May 2002. *Roe v. Texas Dept. of Protective & Regulatory Services*, 299 F.3d 395, 400–01 (5th Cir.2002) ("the second [question is governed] by what was reasonably understood at the time of the challenged act ...."). "In determining whether a right was clearly established at the time of the claimed violation, 'courts in [the Fourth Circuit] [ordinarily] need not look beyond the deci-

10. Although the Court's determination regarding the statute of limitations for the facial challenge to the LSR's has eliminated the need for discussion on this point, much of the argument over the power of the Town to enact the LSR's centers around the LSR's definition of the Lake based on the water level, as compared with the property line between what was once the Mountain Power Company's land and Chimney Rock's land.

11. Although the complaint alleges that the Lake is the property of the Town, it does not allege where the boundary line between the

Lake and Plaintiff's property lies relative to the contour elevations 990 and 995 feet MSL—before or after any relevant erosion. The complaint does refer to the relevant deeds, but none are attached to the complaint. Under the terms of the easement, the Town, as successor to The Mountain Power Company, is required to keep the level of the Lake within six inches of the 992 foot MSL mark. Exhibit A, *supra*. This does not clarify the property line, especially considering that the terms of the easement contemplate that some portion of the property owned by the Town will remain above water.

sions of the Supreme Court, [the Fourth Circuit] court of appeals, and the highest court of the state in which the case arose . . . .'" *Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir.1999) (quoting *Jean v. Collins,* 155 F.3d 701, 709 (4th Cir. 1998)).

▮▮▮▮ "[Q]ualified immunity operates to ensure that before they are subjected to suit, [state or local officials] are on notice their conduct is unlawful. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Pelzer,* 122 S.Ct. at 2515 (citations omitted). In order for a claim of unlawful conduct on the part of an official to avoid the defense of qualified immunity, "in the light of preexisting law the unlawfulness must be apparent." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.,* at 2516.

▮▮▮▮ The Plaintiff has adequately stated three separate claims that her constitutional rights have been violated. The first question is whether the Defendants' conduct in selectively enforcing the LSR's against her violated a clearly established right. Citing the Supreme Court's decision in *Olech, supra,* the Eastern District of Virginia recently decided this issue and held that the right "to be free of arbitrary and discriminatory application of law" is not a new one.[12] *McWaters,* 195 F.Supp.2d at 806. "*Olech* confirmed that government officials constitutionally may not apply a law arbitrarily to, or with the intent to discriminate against, a person who is similarly situated to others to whom the law has been applied. Moreover, in

deciding *Olech,* the Supreme Court clearly articulated that its holding was not based on novel legal theory." *Id.* This Court agrees with that conclusion. If the Defendants have violated Plaintiff's right as alleged, the right they have violated is a clearly established one.

▮▮▮▮ The procedural requirements established for quasi-judicial determinations made by zoning boards by the North Carolina Courts are "clearly established." The *Humble Oil* case which first set forth these requirements was decided in 1974. *Humble Oil, supra.* Although not raised, Defendants' only argument would be that the conclusion that these same procedural protections apply to them in enforcing the LSR's is not clearly established. It is reasonable to infer from the allegations as a whole, however, that the individual Defendants perform the same functions for the Town in enforcing its actual zoning requirements as they do in enforcing the LSR's. Complaint, ¶ 21 ("Defendant Terri Potts is the zoning administrator for the Town . . ."); ¶ 25 ("defendant, H.M.(Chuck) Place, III, who is and was the Town Manager for the Town . . ."). Although not strictly zoning ordinances, the LSR's are analogous land use regulations. Furthermore, the general outline of the LSR's mirror the language and procedure of zoning statutes. As such, the conclusion that the LSR's are subject to the same constitutional procedural requirements as are zoning ordinances *per se* is "apparent" to reasonable officials in Defendants' positions. *Pelzer, supra.*

▮▮▮▮ Finally, the Court must inquire whether Plaintiff's claim that Defendants' application of the LSR's to her property is unconstitutionally vague is

---

**12.** Again, this claim should be distinguished from a claim of malicious prosecution under the Fourth Amendment. Such claims do not

go to any clearly established constitutional rights. *Osborne,* 1998 WL 17044, at \*4–\*5; *Albright, supra.*

"clearly established." By nature, a claim that the particular application of an ordinance is unconstitutionally vague raises serious doubt as to whether a constitutional right to be free from such an enforcement of that ordinance · has been clearly established. *Compare, Tri–County Paving, supra,* ("sufficiently explicit" standard). The only two cases this Court can find where a defendant asserted qualified immunity to a claim that a statute was unconstitutionally vague as · applied found the immunity to be applicable because a reasonable official would not have known that the application of the statute in question was unconstitutionally vague. *Risbridger v. Connelly,* 275 F.3d 565, 574 (6th Cir.2002) ("We conclude that a reasonable officer would not have known that the ordinance would be found to be unconstitutionally vague as applied in this situation."); *Shaddy v. Gunter,* 690 F.Supp. 860, 864 (D.Neb.1988) ("I conclude that the defendants acted with objective legal reasonableness . . ."). Under the logic of the *Risbridger* case, this Court must find qualified immunity applicable to a void for vagueness as applied claim unless the ordinance in question were also unconstitutionally void on its face. *Risbridger,* 275 F.3d at 573–74 (contrasting application of a statute found to be void for vagueness on its face with the application of a facially valid statute in an unconstitutionally void manner. (citing *Michigan v. DeFillippo,* 443 U.S. 31, 33, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("[A]n arrest based on probable cause and made in good-faith reliance on a presumptively valid ordinance is valid regardless of a subsequent judicial determination of its unconstitutionality."))). Even assuming the LSR's are facially unconstitutional, qualified immunity must still apply to this claim, unless they are so clearly vague that a reasonable official would have known that their application would violate a landowners rights. *Pelzer; Harlow, supra.* The LSR's are not, on their face,

vague. It is only in applying them to land which has been significantly eroded such that the elevation 990 MSL is no longer at or near the boundary between the Town's property and that of the surrounding landowners that the LSR's become difficult to interpret. The claim against the Defendants' in their individual capacities based on a substantive due process violation is, therefore, dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED,** that the Defendants' motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 · against Defendants H.M. (Chuck) Place, III, Blaine Cox, George Pressley, and Lea Hullinger in their individual capacities is **ALLOWED,** and such claims are hereby **DISMISSED** based on quasi-judicial immunity.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss the Plaintiff's challenge to the facial validity of the Lake Structures Regulations as being barred by the statute of limitations is **ALLOWED,** and such claim is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the remaining part of Defendants' motion to dismiss is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Plaintiff's motion to amend complaint is **ALLOWED.**

After Defendants respond to the Plaintiff's amended complaint and the initial attorneys conference and certification is filed, the Clerk of Court is directed to schedule a pretrial conference before the undersigned.