IN THE MATTER OF: LUCILLE B. GRAD v. LAURIN J. KAASA, M.D.

No. 251A84

(Filed 6 November 1984)

**Dead Bodies § 3— wrongful autopsy—evidence insufficient**
      In an action for wrongful autopsy, summary judgment was properly granted for defendant where the deceased suddenly collapsed without apparent cause and suffered extensive injuries to the head and face, the emergency room doctor was unable to determine the cause of death, defendant could not have ascertained the cause of the deceased's cardiac arrest without performing an autopsy, defendant testified that because of external injuries he would have conducted the autopsy even if he had known the deceased had a history of heart disease, and G.S. 130-200 (1981) required an autopsy if in the medical examiner's judgment it was advisable and in the public interest. Furthermore, defendant was under no duty to examine the deceased's medical records or to ask plaintiff's permission before performing the autopsy, the simple fact that defendant is paid for each autopsy is insufficient to show that he acted with malice or corruption, and an affidavit from plaintiff's expert stating that the autopsy was unnecessary relates primarily to whether defendant was acting

within the scope of his authority, an issue decided by the Court of Appeals and not now relevant. N.C. Rule of Civil Procedure 56(c).

APPEAL of right by plaintiff pursuant to N.C. Gen. Stat. § 7A-30(2) (1981) from the decision of the Court of Appeals (*Judges Wells* and *Phillips* concurring, *Judge Braswell* dissenting) reported at 68 N.C. App. 128, 314 S.E. 2d 755 (1984), which reversed the grant of summary judgment for the defendant by *Bailey, Judge*, on 13 January 1983 in Superior Court, WAKE County. Heard in the Supreme Court 10 September 1984.

The plaintiff, Lucille Grad, is a registered nurse and administrator of the northern and eastern branches of the Wake County Hospital Systems, Inc., and has approximately forty years experience in nursing and allied health care. The defendant, Dr. Laurin Kaasa, is a doctor of medicine licensed by the American Board of Pathology, and is the Medical Examiner for Wake County.

This case was initiated as a civil action against the defendant for his performance of an autopsy on the body of the plaintiff's husband, Carl Edward Grad, deceased. Plaintiff alleges that Mr. Grad died of a heart attack and seeks compensatory and punitive damages for the alleged wrongful autopsy conducted by defendant. Mr. Grad suddenly collapsed while playing tennis on 17 March 1982. He was taken to the emergency room at Wake County Medical Center and was pronounced dead at 1:44 p.m., after resuscitation efforts failed. Mr. Grad had extensive injuries to the head and face. The emergency room physician was unable to determine the cause of Mr. Grad's death and referred the case to defendant pursuant to N.C. Gen. Stat. § 130-198 (repealed 1984) (now controlled by N.C. Gen. Stat. § 130A-383 *et seq.* (1983) ). Defendant performed an autopsy and concluded that Mr. Grad had died of a heart attack.

The autopsy performed by defendant was a total autopsy in which all organs were removed and later cremated. Because of her training and experience in the various fields of health care, the plaintiff is intimately acquainted with the procedures used in performing post-mortem autopsies. She has extreme revulsion for the procedure used in performing autopsies and is morally opposed to the burial of bodies when not intact, especially that of

her late husband. The plaintiff did not know an autopsy had been performed until she received the death certificate and would have objected had she been informed that defendant intended to perform an autopsy.

After the pleadings were joined, defendant moved for summary judgment. Defendant's motion was supported by plaintiff's interrogatories to defendant and the defendant's answers thereto, defendant's affidavit, and the affidavit of Dr. Page Hudson, Chief Medical Examiner of North Carolina. In opposition to defendant's motion, plaintiff submitted her interrogatories to defendant and the defendant's answers thereto, plaintiff's affidavit, and the affidavit of Dr. Edward Notari, a physician practicing in Pennsylvania. After reviewing the materials, the trial judge granted defendant's motion for summary judgment. The Court of Appeals reversed and defendant appeals based on the dissent of Judge Braswell.

*Jordan, Brown, Price & Wall by Henry W. Jones, Jr., for the plaintiff.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog by Ronald C. Dilthey for the defendant.*

COPELAND, Justice.

Plaintiff argues that there are several issues of material fact in this case to be resolved by the jury and that the Court of Appeals correctly reversed the trial court's grant of summary judgment in favor of the defendant. Before we consider the question of whether summary judgment was proper, we note that plaintiff contends that there is a genuine issue of fact as to whether defendant acted outside the scope of his authority. The Court of Appeals, including Judge Braswell in dissent, concluded that defendant was acting within the scope of his office. *Grad*, 68 N.C. App. at 132, 134, 314 S.E. 2d at 759-60. Because the Court of Appeals' opinion on this issue was unanimous, it is not properly before the Court and will not be considered. N.C. R. App. P. 16(b).

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as

a matter of law." N.C. R. Civ. P. 56(c). Issues which can be proven by substantial evidence are genuine, and facts are material if they constitute or establish any material element of a claim or defense. *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E. 2d 363, 366 (1982). If a party moving for summary judgment meets his burden of proving that there are no disputed issues of material fact and that he is entitled to judgment as a matter of law, then the burden shifts to the opposing party to show that a genuine issue of material fact exists. *Id.* In meeting this burden the opposing party must set forth specific facts that show there is a genuine issue of material fact. *Id.* at 370, 289 S.E. 2d at 366.

"As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 N.C. 303, 331, 222 S.E. 2d 412, 430 (1976). A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. *Givens v. Sellars*, 273 N.C. 44, 159 S.E. 2d 530 (1968). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* at 50, 159 S.E. 2d at 535 (quoting *Everett v. Receivers*, 121 N.C. 519, 27 S.E. 991 (1897) ).

Defendant's forecast of the evidence tended to show that he received a proper death report and made an investigation into the cause and manner of death as required by N.C. Gen. Stat. § 130-199 (1981). Following his investigation, he made a subjective determination that an autopsy was advisable and in the public interest. Defendant was acting within the scope of his office, and his forecast entitles him to summary judgment unless in her forecast of the evidence plaintiff shows by specific facts that a genuine issue of material fact exists. *Lowe*, 305 N.C. at 369-70, 289 S.E. 2d at 366.

Plaintiff contends that a genuine issue of fact exists as to whether defendant acted maliciously or corruptly in conducting the autopsy. In support, plaintiff points to the fact that defendant was well acquainted with her but did not contact her prior to performing the autopsy. Plaintiff knew that her husband had suf-

fered a previous heart attack and had been warned not to over-exert himself. The plaintiff's forecast of evidence indicated that defendant could have obtained this information by contacting plaintiff or examining Mr. Grad's medical records. The Court of Appeals concluded that this forecast raised a genuine issue of material fact as to whether defendant acted with reckless disre-gard of plaintiff's rights by ordering the autopsy without first having made further reasonable investigation into the cir-cumstances of Mr. Grad's death. *Grad*, 68 N.C. App. at 133, 314 S.E. 2d at 760. Plaintiff also argues that the fact that defendant receives $200 for each autopsy he performs as medical examiner raises a genuine issue of fact on the question of whether he acted with corruption. After carefully considering the evidence, we find nothing that raises an issue of material fact as to whether defend-ant acted maliciously or corruptly.

The regulations of the North Carolina Department of Human Resources, in effect at the time of the autopsy, set forth thirteen types of death that shall be reported to the medical examiner by anyone having knowledge of the death. 10 N.C. Admin. Code § 11.0203 (repealed 1 January 1984). Four of the classifications are relevant to this case: (1) trauma, (2) accident, (3) unknown, un-natural, or suspicious circumstances, and (4) sudden, unexpected deaths not reasonably related to known previous diseases. *Id.* Under N.C. Gen. Stat. § 130-200 (1981), a medical examiner *shall* conduct an autopsy if in his judgment it is advisable and in the public interest. There is abundant evidence in this case to support defendant's conclusion that an autopsy was necessary.

Mr. Grad had suddenly collapsed without apparent cause and had suffered extensive injuries to the head and face. The emergency room doctor had been unable to determine the cause of death. The doctor's conclusion that Mr. Grad died suddenly from a cardiac arrest merely describes the death without explain-ing why it occurred, and he properly notified defendant who read the emergency room report and conducted an external examina-tion of Mr. Grad's body before ordering an autopsy. As Judge Braswell correctly pointed out, defendant could not ascertain the cause of the cardiac arrest without performing an autopsy. *Grad*, 68 N.C. App. at 135, 314 S.E. 2d at 760 (Braswell, J., dissenting). Further, defendant testified that because of the external injuries Mr. Grad had suffered he would have conducted the autopsy even

if he had known Mr. Grad had a history of heart disease. Defendant was under no legal duty to examine Mr. Grad's medical records or to ask plaintiff for permission before performing the autopsy. There is nothing in the statutes or regulations from which such a duty can be implied, and defendant's prior relationship with plaintiff did not create one. Therefore, plaintiff's forecast of the evidence does not raise an issue of material fact because, if true, it is insufficient as a matter of law to show that defendant acted with malice or corruption. The same is true of plaintiff's evidence that defendant receives $200 for each autopsy he performs as medical examiner. The simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption.

We note that the Court of Appeals' holding that plaintiff's forecast of the evidence had created an issue of material fact was based in part on the affidavit of plaintiff's expert, Dr. Edward J. Notari. In the affidavit, Dr. Notari stated that in his opinion there was ample evidence available to exclude the possibility of death by trauma, unknown circumstances or any of the other criteria enumerated in the regulations.

We agree with the Court of Appeals that this is not a medical malpractice action, and Dr. Notari need not state that he is familiar with the standards common to the specialty of pathology or medical examiners in North Carolina in order for his affidavit to be admissible. It is sufficient if Dr. Notari, through study or experience, is better qualified than a jury to form an opinion on the need for an autopsy. *State v. Brown*, 300 N.C. 731, 734, 268 S.E. 2d 201, 203 (1980); *State v. Mitchell*, 283 N.C. 462, 467, 196 S.E. 2d 736, 739 (1983). However, Dr. Notari's affidavit does not raise an issue of material fact because his conclusion that the autopsy was unnecessary relates primarily to whether or not defendant was acting within the scope of his authority. That issue was decided unanimously by the Court of Appeals and is not relevant to this appeal. The fact that the autopsy was needless may be relevant to whether the performance of the autopsy was wanton, but the decision to perform the autopsy must also manifest a reckless indifference to the rights of others. *Givens*, 273 N.C. at 50, 159 S.E. 2d at 535. Since we have already held that plaintiff's forecast does not raise an issue of material fact as to whether defendant acted corruptly or maliciously, Dr. Notari's

opinion that the autopsy was unnecessary is irrelevant in determining whether defendant acted wantonly.

Based on our review of the record, we hold that plaintiff's forecast of the evidence failed to raise a genuine issue of material fact, and the Superior Court properly granted summary judgment in favor of the defendant. The decision of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the Superior Court, Wake County, for reinstatement of the judgment of the trial court in favor of defendant.

Reversed and remanded.