RENEE CROCKER, JOY WALDROP, JULIE SPROUSE, RENEE ROOF, Plaintiffs,
v.
CARSON GRIFFIN, individually and As Director of the Transylvania County Department of Social Services and TRANSYLVANIA COUNTY DEPARTMENT OF SOCIAL SERVICES AND TRANSYLVANIA COUNTY, a Body Politic, Defendants.
No. COA09-1000.
Court of Appeals of North Carolina.
Filed May 18, 2010.
Donald H. Barton for plaintiff appellants.
Womble, Carlyle, Sandridge & Rice, PLLC, by Sean F. Perrin, for defendant appellees.

UNPUBLISHED OPINION
ROBERT N. HUNTER, JR., Judge.
Plaintiffs Renee Crocker, Joy Waldrop, Julie Sprouse, and Renee Roof (collectively "plaintiffs") appeal from orders dismissing their claims for: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, and (3) negligent supervision and retention. We conclude that the trial court was correct in dismissing the plaintiffs' complaint under Rule 12 of the North Carolina Rules of Civil Procedure, on the bases of failure to state a claim, lack of subject matter jurisdiction, and public official immunity. Accordingly, we affirm the trial court's order.

I. FACTUAL AND PROCEDURAL BACKGROUND
In their complaint, plaintiffs allege the following. Plaintiffs were employees of Transylvania County Department of Social Services, Protective Services Division ("DSS"). Defendant Carson Griffin ("Griffin") was plaintiffs' supervisor and director while they were employed by DSS.
In the course of their respective employments, plaintiffs allege that from 1993 to 2008, Griffin committed the following acts:
a. As to the Plaintiff Rene Crocker, berating her in front of fellow employees.
b. Criticizing the Plaintiffs[`] work performance in the presence of other DSS employees.
c. Assigning a[n] inordinate number of cases to the Plaintiffs making it extremely difficult if not impossible to meet State mandated requirements with regard to Plaintiffs[`] case load of abused and neglect[ed] complaints and other assigned tasks.
d. On one occasion, informing the Plaintiff Crocker that she was to have 10 cases on her desk by 10:OO a.m. the next morning after the Plaintiff had returned from such leave.
a. Threatening to "write up" the Plaintiff Crocker, if she did not complete the task. Then when Plaintiff Crocker tried to work after her assigned work time to complete the task demanded that she leave the premises "now".
b. Causing stress, anxiety, and depression to the Plaintiffs causing them to seek and receive medical treatment for conditions created by the actions of the Defendant, Griffin.
c. As to Plaintiff Julie Sprouse, while she [was] pregnant with her daughter, Defendant Griffin assigned her an unusually heavy case load making it difficult for her to meet State mandated requirements with regard to her cases.
d. Causing stress and anxiety to the Plaintiffs, proximately causing each Plaintiff to seek and obtain medical treatment and medication.
e. Upon Plaintiff Sprouse's return to work after seeking and receiving medical help, continued the extreme treatment of the Plaintiff Sprouse, who could not continue the previously prescribed medication because of her pregnancy.
f. Causing the Plaintiff Sprouse such stress and anxiety during her pregnancy with her daughter, that she was placed on bed rest by her physician but continued to receive work calls at home while she was on medical leave from Louise Koontz, her program director, but Plaintiff Sprouse believes were at the instigation and direction of Defendant Griffin.
g. Caused the Plaintiff Sprouse to quit her job after her maternity leave in August of 2006 to take a job in the school system at a large decrease in pay.
h. Plaintiff Sprouse requested, to return to DSS, and applying for a position at DSS with Adult Services, Defendant Griffin yelled at the Plaintiff and told her she "had a lot of nerve applying for another job when she had just come back," Defendant Griffin then demanded that Plaintiff Sprouse execute a writing that she was not interested in the job she applied for, placing Plaintiff Sprouse under a verbal threat of termination if she did not do what Defendant Griffin demanded.
i. This incident caused such stress and anxiety to Plaintiff Sprouse that she was required to seek medical treatment and be placed on medication for stress and anxiety.
j. Placed work loads well in excess of State mandated standards on the Plaintiff Sprouse that required workdays and case loads that created on one occasion, a work load of 102 hours for "on call" work. When Plaintiff turned in her time sheet Defendant Griffin came down the hall screaming at Plaintiff Sprouse, waving Plaintiff Sprouse's time sheet and screaming at her "what is this", "what is this", "you just wait", expressing her displeasure in having to pay the Plaintiff for this extra work time created by the excessive case load assigned to Plaintiff Sprouse by Defendant Griffin.
k. Creating such stress and anxiety by Defendant Griffin's assigned workload to Plaintiff and her behavior towards Plaintiff, the Plaintiff Sprouse could not eat or sleep and was placed on medication and ultimately forced to resign her position on April 23, 2008.
l. As to Plaintiff Joy Waldrop, flying into rages, stating demeaning things to Plaintiff such as "wipe that smirk off your face" and "wipe that fake smile off your face".
m. Screamed at the Plaintiff Waldrop in the DSS hallway in the presence of the other employees.
n. Screamed at Plaintiff Waldrop with her door open so as to allow fellow employees to hear her berate the Plaintiff.
o. Screamed at Plaintiff Waldrop so loudly within the hearing of fellow employees such that a fellow employee, on one particular occasion, was preparing to call 911.
p. So threatening in her actions towards Plaintiff Waldrop to cause the Plaintiff to believe Defendant was going to physically assault her.
q. Physically snatching reports from Plaintiff Waldrop's hands.
r. Told the Plaintiff Waldrop she had people "watching her" and "reporting to" the Defendant Griffin.
s. Telling the Plaintiff Waldrop that workers in her unit didn't like her, didn't respect her, were talking behind her back, criticizing her and that she "better watch them because they were `doing things' to try to bring her and the agency down".
t. Set up special rules and demands for Plaintiff Waldrop in her work that were not required for the supervisors, and excluded Plaintiff Waldrop from management team meetings and other events, such as a breakfast meeting at a local restaurant, to which all other supervisors were invited.
u. As to other workers in Transylvania County DSS, verbally attacking workers until they cried, were upset and shaking. Defendant Griffin would then refuse to allow the person to leave her office. Ordering them to "sit down", "take you[r] hands from your face", "look me in the eye" then she would berate them for crying.
v. Caused fear in other workers with her rage and bullying behavior.
w. The actions of the Defendant Griffin caused the Plaintiff Waldrop to have anxiety, trouble sleeping and eating, hyperventilating, difficulty focusing on work. Plaintiff Waldrop was forced to seek medical treatment and was diagnosed with situational depression and placed on medication. Plaintiff Waldrop was required to seek and obtain therapy as well.
x. As to Defendant Griffin's actions and behavior towards other DSS workers, Plaintiff Waldrop observed them shaking, crying, and so upset they left work, sought medical treatment and therapy, obtaining medication for anxiety. Defendant Griffin kept employees in constant fear of being fired, humiliated or verbally attacked by Defendant Griffin in the presence of others.
All plaintiffs, except for Renee Crocker, resigned their positions with DSS as a result of Griffin's conduct. Plaintiffs claim that they suffered periods of unemployment, lack of job benefits, and extreme emotional distress such as depression and anxiety.
Plaintiffs allege that DSS and Transylvania County are liable under the doctrine of respondeat superior because Griffin's conduct was reported to officers, employees, agents, and commissioners of Transylvania County and DSS. According to plaintiffs, Transylvania County and DSS did not respond or react to the reports of Griffin's conduct.
On 9 February 2009, plaintiffs filed a complaint against DSS, Transylvania County, and Griffin in her individual and official capacities (collectively "defendants"). The complaint pled causes of action for negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), and negligent supervision and retention.
Pursuant to Rule 12, defendants filed a motion to dismiss the complaint on 19 February 2009 and an amended motion to dismiss the complaint on 26 March 2009 alleging: (1) plaintiffs' complaint failed to state claims upon which relief could be granted; (2) Public Official Immunity barred plaintiffs' NIED claim against Griffin in her individual capacity; and (3) the trial court lacked subject matter jurisdiction over the NIED claim.
On 21 April 2009, the trial court entered an order granting defendants' Rule 12 motion to dismiss in its entirety. The trial court concluded in particular: (1) plaintiffs failed to state a claim for IIED upon which relief could be granted; (2) the trial court lacked subject matter jurisdiction over the NIED claim; (3) public official immunity barred plaintiffs' NIED claim against Griffin individually; and (4) plaintiffs failed to state a claim for negligent supervision and retention upon which relief could be granted. Plaintiffs thereafter filed a timely notice of appeal.

II. STANDARD OF REVIEW AND JURISDICTION
The standard of review on appeal of an order granting a motion to dismiss pursuant to Rule 12(b)(1) and (6) is de novo. Burgin v. Owen, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428 (2007); Fuller v. Easley, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). Under de novo review, this Court "`considers the matter anew and freely substitutes its own judgment for that of the [trial court].'" State v. Merrill, 191 N.C. App. 131, 134, 664 S.E.2d 565, 567 (2008) (citation omitted).
In reviewing a Rule 12(b)(6) dismissal de novo, we examine the record to see "whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." Burgin, 181 N.C. App. at 512, 640 S.E.2d at 428. Dismissal for failure to state a claim is appropriate where either:
(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.
Wood v. Guilford Cty., 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).
Because the trial court's order disposed of all of plaintiffs' claims, jurisdiction is proper in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2009).

III. ANALYSIS

A. IIED
Plaintiffs argue the trial court erred in dismissing their claim for IIED for failure to state a claim pursuant to N.C.R. Civ. P. 12(b)(6) (2009). We disagree.
In North Carolina, IIED requires a showing of extreme and outrageous conduct, "which is intended to cause and does cause[,]" severe emotional distress. Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Extreme and outrageous conduct is conduct "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]'" Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (citation omitted). "`The liability clearly does not extend to mere insults, indignities, [and] threats[.]'" Wagoner v. Elkin City Schools' Bd. of Education, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994) (citations omitted). As a general rule, "`it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.'" Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (citation omitted). The determination of whether conduct is extreme and outrageous is a matter of law. Wilson v. Bellamy, 105 N.C. App. 446, 468, 414 S.E.2d 347, 359 (1992).
Here, plaintiffs allege that Griffin committed a series of acts constituting extreme and outrageous conduct. However, the allegations in the complaint merely provide, generally, that Griffin caused plaintiffs emotional distress through yelling, shouting, or saying insulting or demeaning things to plaintiffs.
We considered similar allegations to be insufficient in Hogan v. Forsyth Country Club. In Hogan, one plaintiff alleged that one of the defendant's supervisors "screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, and on one occasion threw menus at her." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 122-23. Another plaintiff alleged that a different supervisor
refused to grant her a pregnancy leave of absence, directed her to carry objects such as trash bags, vacuum cleaners, and bundles of linen weighing more than 10 pounds. He cursed at her on one occasion. When she requested, on 10 July 1983, to be allowed to leave work to go to the hospital, Brennan refused to grant permission. When she left without his permission, he terminated her from employment.
Id. at 494, 340 S.E.2d at 123.
In this case, as in Hogan, Griffin's conduct does not go beyond all possible bounds of decency. Even assuming plaintiffs' allegations as true, Griffin was, at worst, an unpleasant supervisor toward plaintiffs. As a result, these acts standing alone are not so extreme or outrageous as to support a claim for IIED. See also Daniel v. Carolina Sunrock Corp., 110 N.C. App. 376, 382, 430 S.E.2d 306, 310 (Evidence insufficient for extreme and outrageous conduct where, inter alia, other employees "took notes on plaintiff's activities, counted and screened plaintiff's personal phone calls, . . . inspected the contents of plaintiff's desk while she attended her father's funeral, moved plaintiff to a smaller office with no phone and no heat, and made harassing phone calls to . . . plaintiff and . . . plaintiff's sister-in-law and mother."), reversed in part on other grounds, 335 N.C. 233, 436 S.E.2d 835 (1993).
Because the first element of IIED is not satisfied, plaintiffs do not have a claim upon which relief can be granted, and therefore, the order to dismiss was properly entered. This assignment of error is overruled.

B. NIED
Plaintiffs argue that the trial court erred by dismissing their NIED claims against DSS and Transylvania County for lack of subject matter jurisdiction on the ground that it "was barred by the exclusivity provisions of the North Carolina Workers' Compensation Act." We conclude that this issue is not properly before this Court.
Plaintiffs' brief completely fails to address the potential applicability of the Workers' Compensation Act as to their NIED claim, and instead plaintiffs devote their argument to the North Carolina State Tort Claims Act. This argument is problematic, because no argument regarding the State Tort Claims Act was raised at trial. As a result, plaintiffs' assignment of error as to this issue fails to state any legal basis for their assertion that the trial court erred in dismissing their NIED claim for lack of subject matter jurisdiction. N.C.R. App. P. 10(b)(1) (2009) (revised July 2, 2009); see also State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) ("[W]here a theory argued on appeal was not raised before the trial court, `the law does not permit parties to swap horses between courts in order to get a better mount[.]'") (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).
We are unable to discern why plaintiffs have addressed their argument toward the North Carolina State Tort Claims Act instead of the Workers' Compensation Act in brief. We note that "mental or psychological illness may be a compensable injury if it has occurred as a result of an accident arising out of and in the course of the claimant's employment." Pitillo v. N.C. Dep't of Envtl. Health & Natural Res., 151 N.C. App. 641, 645, 566 S.E.2d 807, 811 (2002); see also Jordan v. Central Piedmont Community College, 124 N.C. App. 112, 119, 476 S.E.2d 410, 414 (1996) ("We conclude that as long as the resulting disability meets statutory requirements, mental, as well as physical impairments, are compensable under the Act."). However, plaintiffs' brief does not address how the trial court erred in determining that the injuries alleged here are compensable under the Workers' Compensation Act. Additionally, plaintiffs cite no authority to support their argument that the trial court erred dismissing the NIED claim for lack of subject matter jurisdiction. Since plaintiffs have failed to argue or provide authority to support their argument, we deem this issue abandoned.[1] N.C.R. App. P. 28(b)(6) (2009). This assignment of error is dismissed.

C. Public Official Immunity
Plaintiffs argue the trial court erred by dismissing plaintiffs' claim for NIED against Griffin in her individual capacity under the public official immunity doctrine. We disagree.
"When a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officers in determining negligence liability." Hare v. Butler, 99 N.C. App. 693, 699, 394 S.E.2d 231, 236 (1990). "Public officials are distinct from public employees in that officers perform discretionary actions requiring deliberation, decision and judgment, while employees perform ministerial duties that are absolute and certain." Dempsey v. Halford, 183 N.C. App. 637, 640, 645 S.E.2d 201, 204-05 (2007). "A public official may not be held individually liable for mere negligence, but may only be liable where her conduct is malicious, corrupt, or outside the scope of her authority." Dalenko v. Wake Cty. Dep't of Human Servs., 157 N.C. App. 49, 56, 578 S.E.2d 599, 603-04 (2003) (emphasis added).
"`As a general rule it is presumed that a public official in the performance of his official duties "acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest."`" Greene v. Town of Valdese, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982) (citations omitted). "Evidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." Dobson v. Harris, 352 N.C. 77, 85, 530 S.E.2d 829, 836 (2000). "[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." Meyer v. Walls, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). Thus, to overcome the presumption of good faith in favor of a public official, the burden is on the plaintiff to offer a sufficient forecast of evidence to establish a prima facie showing that the public official's actions were malicious, corrupt, or outside the official's scope of authority. Epps v. Duke University, 122 N.C. App. 198, 205, 468 S.E.2d 846, 851-52 (1996).
Here, Griffin is the director of Transylvania County DSS, and she is immune as a public official from claims of mere negligence brought against her in her individual capacity. Meyer v. Walls, 122 N.C. App. 507, 516-17, 471 S.E.2d 422, 429 (1996) (DSS directors entitled to public official immunity), reversed in part on other grounds, 347 N.C. 97, 489 S.E.2d 880 (1997); Hare, 99 N.C. App. at 700, 394 S.E.2d at 236 (same). In order to overcome the presumption of good faith provided by the public official immunity doctrine, plaintiffs here must demonstrate that Griffin's conduct was malicious, corrupt, or outside the scope of her authority. Epps, 122 N.C. App. at 205, 468 S.E.2d at 851-52.
In their complaint, plaintiffs do not allege that Griffin's conduct was corrupt or outside the scope of her authority as a supervisor. We therefore examine plaintiffs' allegations to see whether adequate facts have been pled to show that Griffin's actions were malicious.
"A defendant acts with malice when [1] he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and [2] which he intends to be prejudicial or injurious to another." In re Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (emphasis added). An act is wanton if it is done with a "wicked purpose" or with "reckless indifference to the rights of others." Id. (quotations marks and citation omitted). "`General malice is wickedness, a disposition to do wrong, a black and diabolical heart, regardless of social duty and fatally bent on mischief.' . . . `Particular malice is ill-will, grudge, desire to be revenged on a particular person.'" State v. Long, 117 N.C. 791, 798-99, 23 S.E. 431, 431 (1895) (citation omitted).
Though Griffin's alleged conduct can be characterized as brash, rude, and unpleasant, these descriptions fall far short of being malicious. To show legal malice sufficient to overcome the presumption of public official immunity, plaintiffs are required to produce at least some evidence that Griffin intended to cause plaintiffs' alleged emotional distress. Kaasa, 312 N.C. at 313, 321 S.E.2d at 890; see Hawkins v. State of North Carolina, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242 (1995) ("`Malice' is defined as `[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent.'") (citation omitted and emphasis added). Plaintiffs' complaint in this case, taken as true, merely claims that through various acts of supremely poor emotional control and professional judgment, Griffin "caused" plaintiffs' emotional distress. However, none of plaintiffs' factual allegations demonstrate that Griffin was even aware of the degree of plaintiffs' emotional distress  much less that Griffin intended to cause it as is required to overcome the doctrine of public official immunity. Instead, as our Supreme Court stated was insufficient in Meyer v. Walls, plaintiffs' complaint only alleges that Griffin was malicious, and does not provide a sufficient forecast of facts showing that legal malice exists. 347 N.C. at 114, 489 S.E.2d at 890.
Because the complaint fails to offer facts sufficient for a prima facie showing of legal malice on behalf of Griffin, plaintiffs cannot overcome Griffin's public official immunity for her allegedly negligent actions against plaintiffs. Thus, plaintiffs have no claim upon which relief can be granted, and the trial court did not err in dismissing the NIED claim against Griffin in her individual capacity. This assignment of error is overruled.

D. Negligent Supervision and Retention
Plaintiffs argue the trial court committed reversible error by dismissing their claims for negligent supervision and retention for failure to state a claim pursuant to N.C.R. Civ. P. 12(b)(6). We disagree.
We have already upheld the dismissal of plaintiffs' claims of IIED and NIED against Griffin, and thus plaintiffs cannot prove any liability on the part of Griffin for their alleged injuries. Since plaintiffs have no claim against Griffin, they also have no claim against DSS or Transylvania County for Griffin's alleged wrongful acts. McLain v. Taco Bell Corp., 137 N.C. App. 179, 189-90, 527 S.E.2d 712, 719-20 (2000) (jury verdict in favor of employer on employee's negligent supervision and retention claim upheld on appeal where employee unable to prove manager's liability). Accordingly, this assignment of error is overruled.

IV. CONCLUSION
For the foregoing reasons, we affirm the trial court's order to dismiss plaintiffs' complaint in its entirety.
Affirmed.
Judges STROUD and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] We acknowledge that plaintiffs' rules violation is a non-jurisdictional defect in this appeal. Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008). However, absent a valid argument to address, we find that dismissal of this assignment of error is an appropriate sanction given that it is not necessary for this Court to review plaintiffs' argument under Rule 2 of the North Carolina Rules of Appellate Procedure. Id. at 201, 657 S.E.2d at 367.