**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2249**

BOBBYDYNE MCMILLAN,

             Plaintiff – Appellant,

     v.

CUMBERLAND COUNTY BOARD OF EDUCATION; JOSEPH M.
LOCKLEAR,

             Defendants – Appellees,

     and

CUMBERLAND COUNTY SCHOOLS,

             Defendant.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh.  James C. Dever III, Chief District Judge.  (5:14-cv-00344-D)

Argued:  January 23, 2018                       Decided:  April 3, 2018
                        Amended:  April 4, 2018

Before GREGORY, Chief Judge, DUNCAN, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the majority opinion, in which
Chief Judge Gregory and Judge Floyd joined.

**ARGUED:** Daniel Wilbert Koenig, HOFFMAN KOENIG HERING PLLC, Greensboro, North Carolina, for Appellant. James Scott Lewis, BUTLER SNOW LLP, Wilmington, North Carolina, for Appellees. **ON BRIEF:** Pamela R. Lawrence, BUTLER SNOW LLP, Wilmington, North Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Appellant Bobbydyne McMillan was employed by the Cumberland County Board of Education ("CCBE") and resigned following an investigation into her conduct during the course of her employment. She appeals the district court's grant of summary judgment in favor of the Defendants, CCBE, and Joseph M. Locklear,[1] Associate Superintendent of Human Resources, on her 42 U.S.C. § 1983 Fourteenth Amendment due process, negligence, negligent and fraudulent misrepresentation, and tortious interference with contract claims arising from her resignation as a school employee. She also appeals the district court's denial of her motion for leave to file a third amended complaint. For the reasons that follow, we affirm the district court's judgment.

I.

We begin by outlining the events preceding McMillan's resignation and then provide the relevant procedural history. We review these facts in the light most favorable to McMillan as the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

---

[1] Locklear died during the course of this action. Pursuant to Federal Rule of Civil Procedure 25(d), the district court automatically substituted his successor, Reuben A. Reyes, as the defendant for the claims against him in his official capacity. For the claims against Locklear in his individual capacity, references to "Locklear" herein include the representative of Locklear's estate pursuant to Federal Rule of Civil Procedure 25(a).

A.

CCBE employed McMillan from August 1994 to May 2012. At the time of the events in question, McMillan had achieved "career status" which is commonly referred to as tenure.

The incident that ultimately led to McMillan's resignation occurred in the spring of 2012, when McMillan was serving as in-school suspension coordinator at Reid-Ross Classical Middle-High School. In April 2012, she invited Student A, an unnamed student at Reid-Ross, to stay with her so that the student could avoid a "[b]ad situation at home." J.A. 157. On April 25, 2012, Student B, a different unnamed student, informed his teacher, Samantha Brown, that Student A had hidden a bottle of drugs in the school bathroom. Brown relayed this information to McMillan and the two teachers approached Student B. Student B volunteered to go into the bathroom, retrieve the bottle, and bring it to the teachers. McMillan and Brown agreed to this plan. Student B brought the bottle to McMillan, she and Student B stepped out of the view of the security cameras, and Student B handed McMillan the bottle. McMillan realized that the bottle was expired nausea medication that belonged to her recently deceased child. McMillan maintains that, immediately after the event, she went to speak to Assistant Principal Laquisha Leath about the incident. The parties dispute whether she actually spoke to Leath.

The next morning, Student B's mother came to school and complained about the incident to Principal Thomas Hatch, prompting Hatch to investigate. That same day, Hatch spoke with Student B and McMillan about the incident. McMillan stated in her deposition that Hatch told her "that he had a parent who was upset at the fact that

4

[McMillan] had asked her son to retrieve medication, putting [her son] in jeopardy and that [Hatch] needed to know exactly what was going on and that . . . [McMillan] was jeopardizing [her] job and this incident could cost [her her] job." J.A. 179–80. Hatch then told McMillan to prepare a statement about what happened. McMillan typed a statement and sent it to Hatch. Hatch also received statements from Leath, Student A, Student B, and Brown.

Hatch provided Locklear with the information that he collected from his investigation which Locklear then gave to Superintendent Dr. Frank Till. After reviewing it, Till decided to suspend McMillan with pay and scheduled an administrative conference with McMillan and Locklear to discuss the matter. On May 21, 2012, Till sent McMillan a letter notifying her of the suspension and scheduling the administrative conference for May 22, 2012. The letter stated that there was "certain information which may affect [McMillan's] employment as a teacher." J.A. 261.

On May 22, 2012, McMillan, Till, and Locklear attended the administrative conference which lasted for about an hour. McMillan understood that the purpose of the conference was to "discuss whether or not the grounds existed for [her] termination" and that there was a "possibility [that her] employment could be terminated." J.A. 198. During the meeting, Till asked McMillan to give her account of what occurred. Till then summarized what he understood to be the sequence of events and asked McMillan if he was correct. McMillan explained why she believed that Till's understanding was incorrect. McMillan understood that, after the meeting, Till would be deciding the veracity of her account and whether or not grounds existed for her dismissal.

5

On May 25, 2012, Locklear called McMillan into a meeting in which he informed her that Till had decided to dismiss her. He then told her that instead of being terminated she could complete the pre-filled "Tender of Resignation" form. McMillan agreed and resigned.

B.

On May 27, 2014, McMillan filed a complaint bringing a § 1983 claim alleging a due process violation, as well as state law, negligence, negligent and fraudulent misrepresentation claims against Cumberland County Schools ("CCS") in the Cumberland County Superior Court. CCS removed the action to the United States District Court for the Eastern District of North Carolina. On June 20, 2014, CCS moved to dismiss, claiming that CCS is not subject to suit, as it is not an entity authorized to prosecute or defend lawsuits under North Carolina law. On July 11, 2014, McMillan amended her complaint removing CCS, adding the CCBE and Locklear, and adding a new claim for tortious interference. The district court entered a scheduling order on September 26, 2014, setting the deadline for amending the pleadings for January 16, 2014.[2] The district court granted extensions for certain deadlines including amending the pleadings. After the Defendants filed a Rule 12(c) motion, McMillan moved for leave to file a second amended complaint, which the district court granted. McMillan then

_____

[2] This was a typographical error. The district court later found that January 16, 2015 was the only reasonable reading of the deadline.

amended her complaint. The parties conducted discovery, which ended on December 1, 2015.

On December 15, 2015, after the deadline for amending the pleadings had passed, McMillan moved for leave to file a third amended complaint seeking to add a breach of contract claim. In support of her motion, McMillan stated that during the course of depositions, she was made aware of the fact that N.C. Gen. Stat. § 115C-325(h)(2), which outlines the process required to fire a public school teacher,[3] was incorporated by reference into her employment contract.[4] On December 31, 2015, the Defendants moved for summary judgment.

---

[3] N.C. Gen. Stat. Ann. § 115C-325 provides, in relevant part, the following procedural safeguards for employees facing dismissal:

> Before recommending to a board the dismissal or demotion of the career employee pursuant to G.S. § 115C-325(e)(1), the superintendent shall give written notice to the career employee by certified mail or personal delivery of his or her intention to make such recommendation and shall set forth as part of his or her recommendation the grounds upon which he or she believes such dismissal or demotion is justified.

*Id.* § (e)(2)(b).

> The superintendent also shall meet with the career employee and provide written notice of the charges against the career employee, an explanation of the basis for the charges, and an opportunity to respond if the career employee has not done so under G.S. 115C-325(f)(1).

*Id.* § (h)(2).

[4] The parties agree that the N.C. Gen. Stat. Ann. § 115C-325 was incorporated into McMillan's employment contract.

On September 29, 2016, the district court denied McMillan's motion to file a third amended complaint and granted the Defendants' summary judgment motion. The district court found that the pre-termination procedure employed by the Defendants was sufficient process under the Fourteenth Amendment, that Locklear was entitled to public official immunity on the negligence claims, that the negligent misrepresentation and fraudulent misrepresentation claims fail in part because "no reasonable jury could find reasonable reliance on Locklear's alleged misstatement," J.A. 1058, and that her claim for tortious interference fails because "no rational jury could find that Locklear [as a 'non-outsider'] acted with malice or for an illegitimate reason." J.A. 1059-60. The district court denied McMillan's third motion to amend because it found that she had not shown good cause as required by Federal Rule of Civil Procedure 16(b)(4).

II.

On appeal, McMillan argues that the district court erred in granting the Defendants summary judgment on each of her claims. First, she argues that the district court erred in granting summary judgment on her due process claim because she was not provided sufficient notice of the charges against her. Second, she argues that the district court erred by granting summary judgment to the Defendants on her negligent and fraudulent misrepresentation claims because the fact that the Defendants did not inform her of her rights as a career-status employee amounted to a negligent or fraudulent misrepresentation on which she reasonably relied. Third, she further argues that she "[f]orecasted [s]ufficient [e]vidence" that Locklear was an outsider to her employment

8

contract and was therefore not entitled to the qualified privilege on her tortious interference claim. Appellant's Br. at 40. Finally, she argues that Locklear was not entitled to public official immunity on her negligence claim against him because he acted with "legal malice and/or for an illegitimate reason." Appellant's Br. at 41. We review de novo the district court's grant of summary judgment. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). For the reasons that follow, we must reject each of McMillan's arguments.

## A.

McMillan argues that the district court erred in granting summary judgment to the Defendants on her due process claim because she argues that, prior to her resignation, she was not told what she had done wrong, what evidence the CCBE had against her, her rights as a career-status teacher, and that there was a "possibility she might lose her job." Appellant's Br. at 18. Because McMillan had notice and an opportunity to be heard, we disagree. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).[5]

In order to show a due process violation "a plaintiff must first show that [s]he ha[d] a constitutionally protected 'liberty' or 'property' interest, and that [s]he ha[d] been

---

[5] An employee that resigns voluntarily relinquishes his or her property interest in his or her employment even if the employer prompted the resignation. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (1988). The district court determined that it need not address whether McMillan voluntarily resigned because it determined that viewing the evidence in the light most favorable to her, no reasonable jury could find that the Defendants violated her due process rights. We do the same.

'deprived' of that protected interest by some form of 'state action.'" *Stone*, 855 F.2d at 172 (internal citations omitted). As a tenured state employee, McMillan has a constitutionally protected liberty interest in her employment and is entitled to the minimum procedural standards required by due process in the event of her termination. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985).

Accordingly, McMillan "is entitled to [1] oral or written notice of the charges against [her], [2] an explanation of the employer's evidence, and [3] an opportunity to present [her] side of the story." *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1463 (4th Cir. 1990) (quoting *Loudermill,* 470 U.S. at 546). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* (quoting *Loudermill*, 470 U.S. at 545-46 (1985)). "Due process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [the employee] to identify the conduct giving rise to the dismissal and thereby to enable him to make a response." *Linton v. Frederick Cty. Bd. of Cty. Com'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992).

With respect to the first and second prongs of the *Riccio* test, the Defendants provided McMillan with sufficient notice of the charges brought against her. McMillan stated in her deposition that Hatch told her "that he had a parent who was upset at the fact that [McMillan] had asked her son to retrieve medication, putting [her son] in jeopardy and that [Hatch] needed to know exactly what was going on and that . . . [McMillan] was jeopardizing [her] job and this incident could cost [her her] job." J.A. 179–80. From this

10

statement, it is clear that she was aware of what actions had given rise to the concern, who raised the concerns, and the possible consequences. Therefore, the first two prongs of the *Riccio* test have been satisfied.

McMillan asserts that she was entitled to "*specification* of the charges against her." Appellant's Br. at 24. Not so. Federal due process only requires that the explanation of the charges be descriptive enough to "permit [the employee] to identify the conduct giving rise to the dismissal and thereby to enable him to make a response." *Linton*, 964 F.2d at 1440. Moreover, although the North Carolina due process requirements that McMillan urges us to consider may require more specificity,[6] they are immaterial to the federal due process question presented here. "If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue." *Riccio*, 907 F.2d at 1469; *see also Gray v. Laws*, 51 F.3d 426, 438 (4th Cir. 1995) ("The Constitution's due process requirements are defined by the Constitution and do not vary from state to state on the happenstance of a particular state's procedural rules."). To be sure, we were presented with a similar question in *Riccio*, which required us to opine on the level of specificity required for notice in such employment situations. There, the employee was not given written notice of all of the specific charges against him, nevertheless we found that the employee, over

_____

[6] McMillan points out that the state due process laws were incorporated into her employment contract to no avail on appeal. Breach of contract is not an issue before us and she has not shown that the district court abused its discretion in denying her leave to amend to add this claim. *See infra* section III.

11

the course of meetings with his employer in which his employer explained the allegations, received effective notice of all of the charges. *Riccio* 907 F.2d at 1465. Similarly, although McMillan's letter did not detail the allegations against her, it is clear from her deposition that, over the course of her meetings with CCBE officials, she learned exactly what prompted the investigation and of what she was being accused.

Furthermore, McMillan had two opportunities to tell her side of the story as required by the final prong of the *Riccio* test. First, Principal Hatch instructed her to write out a statement about what happened. Second, Till and Locklear allowed her to share her account at the administrative conference, and invited her to correct what she believed to be Till's incorrect summation of what happened.

At bottom, the Defendants afforded McMillan all of the process that she was due and, as such, the district court did not err in granting the Defendants summary judgment.

B.

McMillan further argues that the district court erred by holding that Locklear was entitled to public official immunity on her claim that he negligently induced her to resign. We disagree.

In North Carolina, "[i]t is settled law . . . that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto . . . unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties." *See Smith v. Hefner*, 68 S.E.2d 783, 787

12

(N.C. 1952). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 321 S.E.2d 888, 890 (N.C. 1984). "[A] conclusory allegation that a public official acted willfully and wantonly should not be sufficient . . . [t]he facts alleged in the complaint must support such a conclusion." *Meyer v. Walls,* 489 S.E.2d 880, 890 (N.C. 1997).

"It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Leete v. Cty. of Warren*, 462 S.E.2d 476, 478 (N.C. 1995) (quotation omitted). "Every reasonable intendment will be made in support of [this] presumption." *Styers v. Phillips*, 178 S.E.2d 583, 591 (N.C. 1971) (quotation omitted). One may only overcome the presumption of good faith by providing "competent and substantial evidence" to the contrary. *Leete*, 462 S.E.2d at 478.

The parties do not dispute that Locklear was a public official; they only dispute whether Locklear's conduct was malicious, corrupt, or beyond the scope of his duties. McMillan's conclusory allegations against Locklear in her complaint include the following:

> Defendant Locklear's false and deceptive statements to Plaintiff were corrupt, malicious, made in bad faith, and/or made outside the scope of Defendant Locklear's authority, in that Defendant Locklear did not inform Plaintiff of the charges against her; did not make Plaintiff aware of the nature of the May 25, 2012 meeting; provided Plaintiff with less than two (2) hours notice of the May 25, 2012 meeting; presented Plaintiff with a pre-filled out resignation form.

13

J.A. 66–67. A party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). McMillan's allegations are conclusory. They set forth no underlying facts and describe no actions taken by Locklear that were malicious, corrupt, or outside of the scope of his duties as opposed to discretionary decisions entitled to the presumption of good faith. Therefore, the district court did not err in finding that Locklear was entitled to public official immunity.

### C.

McMillan argues that the district court erred by granting summary judgment to the Defendants on her fraudulent and negligent misrepresentation claims. Again, we disagree. We first recite McMillan's allegations and the relevant North Carolina law before turning to the legal analysis.

### 1.

McMillan brings a fraud claim against Locklear and a negligent misrepresentation claim against both Defendants for some of the statements, representations, and omissions made during the pre-termination process.

With respect to her claim for fraudulent misrepresentations, McMillan alleged that Locklear made the following statements during the meeting in which she tendered her resignation: (1) Till had made the decision to fire her which was final, (2) that she should

14

resign if she did not want to be terminated, (3) and that if she resigned on the same day, she may be able to continue to teach at another school but if she did not, she would no longer be able to teach at all. She further alleges that Locklear concealed "material facts," including her right to due process, the extent to which the decision to dismiss her was final, and the consequences of her resignation. J.A. 65.

As for her negligent misrepresentation claims, McMillan alleges that both Defendants breached their duty to her during the May 25, 2012, meeting by providing her with false and deceptive statements, failing to provide her with the opportunity to leave the meeting and consult with counsel or an advisor, and failing to inform her of her due process rights.

2.

Under North Carolina law, in order to state a fraud claim one must show that there was a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," where "any reliance on the allegedly false representations [is] *reasonable*." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)) (emphasis added). Similarly, the "[t]he tort of negligent misrepresentation occurs when a party *justifiably relies* to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988) (emphasis added).

15

Because, under North Carolina law the "question of justifiable reliance is analogous to that of reasonable reliance in fraud actions," *Marcus Bros. Textiles, Inc., v. Price Waterhouse, LLP*, 513 S.E.2d 320, 327 (N.C. 1999) (quoting *Stanford v. Owens*, 265 S.E. 2d 617, 622 (1980)) we need not engage in two separate reliance inquiries, *see, e.g.*, *Forbis*, 649 S.E.2d at 387–88 (engaging in a discussion on the reasonableness of reliance in a similar manner to how North Carolina courts consider justifiable reliance). We therefore discuss whether McMillan justifiably relied on the alleged misrepresentations.

"A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." *Dallaire v. Bank of Am.*, *N.A.*, 760 S.E.2d 263, 267 (N.C. 2014). "Whether a party's reliance is justified is generally a question for the jury, except in instances in which the facts are so clear as to permit only one conclusion." *Id.* (internal quotations omitted).

3.

The Defendants argue that the statements in question were, in fact, not false. However, we need not decide that issue because no reasonable jury would find that McMillan justifiably relied on what she alleges the fraudulent or negligent misrepresentations to be. There is no dispute that McMillan failed to inquire about the procedural protections to which she was entitled even though she was put on notice that her actions may lead to her termination a month prior to the May 25, 2012 meeting at which the allegedly false statements were made. McMillan acknowledged in her

16

deposition that she knew the purpose of the administrative conference was to discuss whether she would be dismissed. Yet, she did not call the North Carolina Association of Educators, contact an attorney, or refer to her employee handbook--all of which appear to be reasonable inquiries--before or immediately after the May 22 administrative conference. Furthermore, N.C. Gen. Stat. § 115C-325, which provides procedural protections for state employees, was incorporated by reference into McMillan's contract. She could have referenced the contract for more information. This failure prevents her reliance on the statements at issue from being reasonable. Accordingly, the district court did not err in granting summary judgment in favor of the Defendants on these claims.

### D.

McMillan argues that the district court erred in granting Locklear summary judgment on her tortious interference claim. She argues that because Locklear acted with wrongful or improper purpose he was not entitled to the presumption that his actions were justified as a non-outsider. *See Embree Constr. Grp. Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 924–926 (N.C. 1992). McMillan, however, has not presented evidence from which a reasonable jury could find that Locklear acted with malice or for an illegitimate purpose.

In North Carolina, the

> tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to

17

perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988). To that end, acting without justification is a key element of the tort of tortious interference. If a party "ha[s] a legitimate business interest . . . in the subject matter" of the contract, they are considered a "non-outsider" to the contract. *Smith v. Ford Motor Co.*, 221 S.E.2d 282, 292 (N.C. 1976). Non-outsiders, such as corporate officers, are entitled to a qualified privilege and their actions are presumed justified. *See Embree,* 411 S.E.2d at 924–926 (N.C. 1992); *Lenzer v. Flaherty*, 418 S.E.2d 276, 286 (N.C. App. 1992) ("It is true that so-called 'non-outsiders' often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee."). However, a plaintiff can overcome an inference of justification by showing that the defendant acted with malice or for a reason "not reasonably related to the protection of a legitimate business interest." *See Sellers v. Morton*, 661 S.E.2d 915, 921 (N.C. App. 2008) (quotation omitted). In order to successfully do so "the complaint must admit of no motive for interference other than malice." *See Pinewood Homes, Inc. v. Harris*, 646 S.E.2d 826, 832–833 (N.C. App. 2007).

As the Associate Superintendent for Human Resources, Locklear had a legitimate business interest in McMillan's employment contract and as such is entitled to a presumption that his actions were justified. McMillan has failed to rebut this presumption because the evidence supports inferences of a legitimate motive for Locklear's actions outside of malice. *See id.* ("[T]he complaint must admit of no motive

18

for interference other than malice."). For example, offering the option to resign before termination gave McMillan the option to avoid having the State Department of Public Instruction notified of her termination. Locklear may have been acting to circumvent a costly and time-consuming appeal process which appears to be in the interest of the school system instead of an improper motive as McMillan alleges. McMillan has not presented evidence of an improper motive. Therefore, because no reasonable jury could conclude that Locklear acted with malice or for a purpose not reasonably related to a legitimate school interest, the district court did not err in granting the Defendants summary judgment on her tortious interference claim.

III.

McMillan argues the district court abused its discretion in denying her leave to file a third amended complaint adding a breach of contract claim because she alleges that the Defendants would not have been prejudiced. Below, McMillan did not initially argue to amend her complaint on the good cause standard set forth by Rule 16(b)(4). She instead argued under Rule 15(a)(2) for leave to amend which does not require a showing of good cause. On appeal McMillan maintains that she nevertheless proved that good cause existed in her memorandum in support of leave to amend pursuant to Rule 15(a)(2). We are unconvinced.

We review the denial of leave to amend for abuse of discretion. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Once a district court has entered a scheduling order it may be modified only for good cause. Fed. R. Civ. P. 16(b)(4);

19

*Parvizian*, 535 F.3d at 298 ("Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished opinion) (citations omitted).

McMillan did not show good cause to amend her complaint. Ordinary diligence would have revealed the fact that she could have asserted a breach of contract claim because the basis on which she would assert a breach of contract claim stems from the same allegations on which she asserted her other claims. Breach of contract is the third factor of a tortious interference claim, which she included in her first amended complaint. Furthermore, McMillan's argument that the Defendants would not be prejudiced is beside the point. She must show good cause. Thus, the district court did not abuse its discretion in denying her leave to amend her complaint.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

20